SHIRLEY S. ABRAHAMSON, J.
¶ 42. (concurring in part and dissenting in part). I agree with the per curiam that the July 16, 2015 majority opinion authored by Justice Gableman is significantly flawed and must be modified.[1] I do not, however, join the per curiam denying the Special Prosecutor's motion for reconsideration.[2]
f 43. In response to the motion for reconsideration, the per curiam significantly modifies the July 16, 2015 majority opinion by creative writing devoid of supporting legal authority. Furthermore, events subsequent to the motion for reconsideration have overtaken the per curiam.
¶ 44. Although professing to be even-handed in its treatment of the Special Prosecutor and the Un *379 named Movants, the per curiam is anything but evenhanded. The per curiam terminates the Special Prosecutor's authority to act as Special Prosecutor from this date forward and leaves the prosecution and State totally unrepresented in future proceedings in the John Doe trilogy. Yet the per curiam nonetheless assigns the Special Prosecutor new tasks and new deadlines without providing the Special Prosecutor (a private practitioner) any compensation or assistance.
¶ 45. The per curiam appears to derail any meaningful review of the July 16, 2015 majority opinion, to stop any and all further investigation, and to prevent the release of information obtained during the investigation.
¶ 46. In sum, the per curiam embraces confusing and conflicting positions, all the while leaving many important issues unresolved, including those posed by events subsequent to the motion for reconsideration.
¶ 47. Specifically, the per curiam fails to address six events that have occurred since Justice Gableman's July 16, 2015 majority opinion and the Special Prosecutor's August 4, 2015 motion for reconsideration. These intervening events significantly and immediately affect a response to the motion for reconsideration. But the per curiam ignores the intervening events.
¶ 48. The six intervening events in chronological order are as follows:
1. The legislature enacted 2015 Wis. Act 55 (effective July 14, 2015) and 2015 Wis. Act 64 (effective October 25, 2015), revising the John Doe statutes. The current, as-revised statutes are attached hereto as Attachment B. The statutory revisions address, among other matters, the authority of reserve judges to preside over *380 John Doe proceedings, secrecy orders, return of seized material, and notice to persons with an interest in seized materials.
2. On October 28, 2015, Unnamed Movant No. 2 filed a document labelled a "notice of statutory changes." In essence, the "notice" is a motion seeking relief. The motion asserts that Act 64 affects, among other things, existing John Doe secrecy orders and the continued authority of reserve judges who were appointed John Doe Judges before Act 64 was enacted. The position of Unnamed Movant No. 2 appears to be that one of the statutory revisions terminates existing secrecy orders in John Doe I and John Doe II as to everyone except a judge, district attorney, other prosecutor, law enforcement officer, interpreter, or court reporter.[3] Unnamed Movant No. 2 also contends that various other statutory revisions affect the John Doe I and John Doe II investigations going forward. As a result, Unnamed Movant No. 2 argues this court should grant the Unnamed Movants relief according to the terms of the statutory revisions.
3. On October 29, 2015, counsel for the Reserve Judge appointed to preside over John Doe II proceedings advised the court that the Reserve Judges appointed to preside over the John Doe I and John Doe II proceedings will take no further action unless and until this court determines that it is appropriate for them to proceed.
*381 4. On November 11, 2015, the Special Prosecutor filed a response to Unnamed Movant No. 2's motion, arguing that the statutory revisions are inapplicable to the instant cases; and that if the revised statutes are applicable to the instant cases they interfere with existing court orders and are unconstitutional violations of the separation of powers doctrine.
5. On November 12, 2015, a district attorney and two assistant district attorneys filed a supplemental memorandum in support of their petition for limited intervention seeking to preserve documents from destruction. These petitioners for limited intervention argue that Unnamed Movant No. 2's filing (which they consider a motion) improperly seeks to expand the scope of Justice Gableman's July 16, 2015 majority opinion to require the destruction of not only materials obtained in the John Doe II investigation but also materials acquired in the John Doe I investigation and that limited intervention is required to afford the petitioners procedural and substantive due process.
6. On November 19, 2015, Unnamed Movant No. 2 filed a "reply regarding notice of statutory change." The filing of a reply further demonstrates that Unnamed Movant No. 2's "notice of statutory changes" is really a motion. Among other things, the reply clarifies Unnamed Movant No. 2's position regarding the effect of the statutory revisions on the John Doe I and John Doe II investigations and responds to the Special Prosecutor's argument that the application *382 of the revised statutes to the instant cases unconstitutionally violates the separation of powers doctrine.
¶ 49. In short, these intervening events raise the issue of whether recently-enacted statutory revisions effective July 14 and October 25, 2015, apply to the John Doe proceedings commenced prior to the effective date of the revised statutes.
¶ 50. These intervening events make clear that the per curiam is too little, too late. The per curiam fails to come to grips with the present circumstances in which the court and parties find themselves. The court leaves these and other important issues for another day, although they are of immediate significance and ripe for decision, having been fully briefed.
¶ 51. The per curiam is too little: It does not address the effect of the revised John Doe statutes on the majority opinion, the per curiam, and the pending John Doe proceedings commenced prior to the effective date of the revised statutes. It merely references the recently revised John Doe statutes once, in footnote 4,[4] and ignores the other filings relating to the revised statute.
¶ 52. The per curiam is too late: As a result of these six intervening events, the per curiam is responding to pre-October 28, 2015 circumstances, not present circumstances. Therefore, the per curiam is an *383 interim, temporary document that will have to be modified and clarified. The court is dealing with the John Doe trilogy in a piecemeal fashion. Thus, each opinion or order will be short-lived, requiring expeditious revision. The per curiam's piecemeal approach creates more work for the litigants, the lawyers, and this court.
¶ 53. I would grant the motion for reconsideration, order oral argument on the issues raised in the motion for reconsideration and the effect of the revised John Doe statutes, and then issue a decision. Oral argument would allow the court and the public to consider the numerous issues raised by the parties and the six intervening events in the crucible of an open, adversary proceeding.
¶ 54. I turn now to the substance of the too-little-too-late per curiam.
¶ 55. The per curiam is confronted with five sealed motions (and responses thereto):
1. A motion for reconsideration filed by the Special Prosecutor.
2. Three motions for limited intervention. One was filed by two investigators; a second was filed by a law enforcement officer. A third was filed by a district attorney and two assistant district attorneys, but is not addressed by the court. This third motion is substantially similar to the other two motions for limited intervention and received the same response from the Unnamed Movants.
3. A motion filed by Unnamed Movants Nos. 4 and 5 for immediate remand to John Doe Judge Gregory Peterson.
*384 ¶ 56. Today four justices deny four of the five sealed motions in the per curiam and two separate orders.
¶ 57. The motion for reconsideration is denied in the per curiam, but Justice Gableman's July 16, 2015 majority opinion is significantly modified.
¶ 58. Two of the three motions for limited intervention are denied in a separate order. No explanation is offered for the denial.
¶ 59. The per curiam ignores the third motion for limited intervention by a district attorney and assistant district attorneys. It is still pending before the court. No explanation is offered for not responding to the motion. (Is the court holding this motion to try to induce the district attorney and two assistant district attorneys to seek full intervention so the prosecution and State are represented hereafter?)
¶ 60. The motion to remand matters to John Doe Reserve Judge Peterson is denied in a second order. No explanation is offered for the denial.
¶ 61. My separate writings about the per curiam and two orders, one denying limited intervention and the other denying the remand to the John Doe Judge, should be read together.[5]
¶ 62. In this writing, I address the per curiam denying the Special Prosecutor's motion for reconsideration.
¶ 63. Lest the reader get lost in the per curiam's thicket, let me begin by summarizing the per curiam's salient modifications of the majority opinion.
*385 ¶ 64. First, the per curiam does not modify the majority opinion's misguided conclusion that the State cannot constitutionally regulate coordinated issue advocacy at all.[6] The Special Prosecutor has called the court's attention to a recent decision of the United States Court of Appeals for the Third Circuit that is contrary to the July 16, 2015 majority opinion. The Third Circuit recognized on July 16, 2015, that the United States Supreme Court has consistently held that disclosure requirements are not constitutionally limited to express advocacy; "there is not a 'rigid barrier between express advocacy and so-called issue advocacy.' "[7]
¶ 65. Second, the per curiam does modify the majority opinion's mandate regarding the validity of the appointment and continuing authority of the Special Prosecutor.[8]
*386 ¶ 66. The per curiam modifies the majority opinion's mandate by "order [ing] as a matter of law that the [Special Prosecutor's] authority is terminated" from this date forward.[9] Thus the prosecution and State are left totally unrepresented hereafter. If the Special Prosecutor is not permitted to represent the prosecution's and State's interests, then who may?
¶ 67. The per curiam has painted itself into a corner without a way out by eliminating representation for the prosecution and State in John Doe II proceedings from today on. And there are many matters to be decided in the John Doe II proceedings still before the court.
¶ 68. In February 2014, Three Unnamed Petitioners alerted the court that if the Unnamed Petitioners prevailed on their argument that the Special Prosecutor's appointment was invalid, the five district attorneys would need to be parties in order to continue proceedings in the Special Prosecutor's absence.[10] A copy of the Three Unnamed Petitioners' motion to add the five district attorneys as parties is attached hereto as Attachment C.
*387 ¶ 69. The four justices joining the per curiam ignored the Three Unnamed Petitioners' admonitions and denied the motion without explanation on December 16, 2014.[11]
¶ 70. Now, more than a year and a half after the motion was made, almost one year after the motion was denied, and more than four months after the July 16, 2015 majority opinion ordered the investigation closed, the per curiam is desperately trying to find someone other than the Special Prosecutor who can represent the State's interests so the court can conduct adversarial proceedings on the many remaining issues. The per curiam has thus far failed in this endeavor.
¶ 71. Third, the per curiam modifies the majority opinion's mandate, by eliminating the "search and destroy" mission that the majority opinion ordered.[12]
¶ 72. The majority opinion directed the "special prosecutor and the district attorneys involved in this investigation [to] cease all activities related to the investigation, return all property seized in the investigation from any individual or organization, and permanently destroy all copies of information and other materials obtained through the investigation."[13]
¶ 73. The "search and destroy" mandate in the majority opinion is so broad and difficult to understand and implement that parties on both sides of the "v." have proposed a variety of ways of clarifying and *388 modifying the mandate or remanding the implementation of the majority opinion to the John Doe Judge.
¶ 74. The per curiam modifies the majority opinion by ordering the Special Prosecutor to undertake a "clear and hold" mission.[14] Thus, the per curiam modifies the Special Prosecutor's rules of engagement. The Special Prosecutor and the "prosecution team" must divest themselves of the documents and electronic files from the John Doe investigations and submit them under seal to the Clerk of the Supreme Court.[15]
¶ 75. The per curiam constructs the new "clear and hold" mandate out of whole cloth, without sufficient information about what and where the materials are to be "cleared and held." The per curiam is entering an order in a factual vacuum. The four justices joining the per curiam do not know the full extent and nature of the items and material gathered in the course of the investigation. Moreover, the four justices joining the per curiam do not know whether this mandate can be implemented within the times they allotted.[16] Simply put, the four justices are issuing the per curiam mandate in the dark.
*389 ¶ 76. Consequently, implementing the per curiam's mandate will pose difficulties. Moreover, after the per curiam is released many issues remain unresolved and will dominate this court's work for a long time to come.
¶ 77. Fourth, by modifying the majority opinion's mandate, the per curiam effectively grants the Special Prosecutor's motion for a stay of the majority opinion's "search and destroy" mandate, at least pending review by the United States Supreme Court.[17] In modifying the majority opinion, the per curiam provides that documents and electronic data will not be destroyed until further order of the court.[18] But the four justices joining the per curiam say nothing about when such an order might be issued and what it might say.
¶ 78. I concur in the concept of a stay. The stay the per curiam grants does not, however, appear to preserve John Doe materials to use in future criminal prosecutions. Nor does the per curiam assure that the materials will be preserved and available for use by the Special Prosecutor and others in their defense of presently pending civil litigation relating to the John Doe trilogy.[19]
*390 ¶ 79. The per curiam states that materials "could also potentially be available for use in related civil proceedings, if there is a request and a determination that such use is proper under the circumstances."[20] This cryptic aside does not assure that the materials will actually be available for use in related litigation, let alone that the materials will be preserved until the relevant statutes of limitations on civil litigation have run. Nor does the per curiam explain how the Special Prosecutor or others may access the materials except through a "request," or what uses are "proper under the circumstances."[21] According to various reports, similar future litigation has been threatened.[22]
¶ 80. Fifth, the per curiam modifies the functions of the Special Prosecutor from this date forward. The per curiam terminates the authority of the Special *391 Prosecutor to act as special prosecutor and assigns him new tasks without giving the Special Prosecutor (who is a private practitioner), any resources or payment for his services.[23]
¶ 81. The John Doe investigation is based in large part on the idea of "follow the money."[24] Here, it is unclear where the money to support the per curiam's orders will come from. The four justices have imposed an "unfunded mandate" on someone. But on whom? The Special Prosecutor personally? The State? A county? Which one?
¶ 82. Sixth, as stated previously, the per curiam is silent regarding what modifications, if any, will be needed to the July 16, 2015 majority opinion and to the per curiam in light of the recent statutory revisions to the John Doe statutes and the related filings.[25] For example, one non-statutory provision of 2015 Wis. Act 64, Section 12j, states that John Doe secrecy orders "in effect on the effective date of this subsection may apply only to" John Doe judges, district attorneys, other prosecuting attorneys, law enforcement personnel, interpreters and court reporters.[26] Under Section 12j, *392 secrecy orders covering other individuals are "terminated on the effective date of this subsection."[27] The effective date of 2015 Wis. Act 64 is October 25, 2015. The court leaves these and other important issues for another day although they are fully briefed and of immediate significance.
¶ 83. I turn now to examining the flaws in the per curiam in the following order:
1. The motion for reconsideration is veiled in secrecy. The per curiam may be open to challenge on First Amendment and state grounds. The per curiam also does not address leaks of sealed information. See ¶¶ 84-91, infra.
2. The per curiam overreaches to terminate the Special Prosecutor's authority to act as special prosecutor from this date forward. See ¶¶ 92-109, infra.
3. In terminating the authority of the Special Prosecutor, the per curiam unfairly leaves the prosecution and the State unrepresented from this date forward and deprives the Special Prosecutor, prosecutors, and law enforcement of the opportunity to preserve materials from destruction. See ¶¶ 110-125, infra.
4. The question remains whether the per curiam is impeding review by the United States Supreme Court by terminating the authority of the Special Prosecutor. See ¶¶ 126-130, infra.
*393 5. Based on its erroneous conclusion that the Special Prosecutor never presented evidence of illegally coordinated express advocacy to the John Doe Judge, the per curiam erroneously concludes that the investigation into coordinated express advocacy cannot continue. See ¶¶ 131-144, infra.
6. The per curiam constructs the "clear and hold" mandate in a factual vacuum and the mandate will require further clarification. Indeed the Unnamed Movants do not agree in their recommendations to the court about the disposition of the materials. See ¶ ¶ 145-149, infra.
7. The per curiam is unclear about whom it binds. See ¶ 150, infra.
8. The per curiam ignores the Special Prosecutor's argument that evidence obtained through the subpoenas and search warrants should be retained under the good faith exception in Fourth Amendment suppression jurisprudence. See ¶¶ 151-152, infra.
9. The per curiam leaves many foreseeable questions unanswered. See ¶¶ 153-155, infra.
* $ * *

*394
1. The motion for reconsideration is veiled in secrecy. The per curiam may be open to challenge on First Amendment and state grounds. The per curiam also does not address leaks of sealed information.

¶ 84. Thirty-three filings, including the motion for reconsideration (and responses) and nearly every other filing in this court since July 16, 2015, are sealed. For a listing of the 33 sealed filings since July 16, 2015, see Attachment A, attached.[28] Thus, the parties' factual and legal arguments are closed to the public.[29]
¶ 85. Why the secrecy? And by whose order? All the filings were automatically sealed, without any review by this court and without any instruction or order from this court.
¶ 86. To illustrate the excessive sealing of material since July 16, 2015, I note two particularly egregious examples.[30]
*395 ¶ 87. First, both the complaint and amended complaint in the federal case entitled Archer v. Chisholm, No. 15-cv-922-LA (E.D. Wis.) are appended to proposed intervenors' sealed motions. The Archer complaints are not under seal in the federal court. How can this court justify the sealing of complaints that are open in federal court? It cannot.
1 88. Second, the Special Prosecutor filed a letter stating that he intends to respond to Unnamed Movant 2's "notice of statutory changes." Although the letter explicitly stated that it was not being filed under seal; that it does not contain any confidential information; and that no redactions are needed, the letter was automatically sealed without any review by the court and without any instruction or order from the court.
¶ 89. The general rule is that court filings are presumptively open for public inspection. Placing filings under seal is the exception to the rule.[31] In the face of virtually total secrecy of filings since July 16, 2015, the public cannot understand the basis for the four justices' decisions. "The crucial prophylactic aspects of the administration of justice cannot function in the dark; no community catharsis can occur if justice is 'done in a corner [or] in any covert manner.' "[32]
*396 ¶ 90. The automatic sealing of virtually all filings since July 16, 2015 without explanation raises significant First Amendment, state constitutional, statutory, and common law issues, and may be challenged as erroneous.[33] Any need to maintain the secrecy of portions of any filings should have been addressed promptly by the participating justices and material redacted for the public if necessary.
¶ 91. My primary concern to this point has been that this court continues to seal too much from public view. The court has failed to release documents that need not be sealed or that are already publicly available.[34] At the same time, the court's failure to enforce its sealing orders has, unfortunately, allowed a growing tide of leaks, flouting the court's orders without fear of consequences.[35] This situation does not engender confidence in the transparency or sealing of the *397 proceedings, in the rule of law, or in this court's ability or willingness to enforce its orders.

2. The per curiam overreaches to terminate the Special Prosecutor's authority to act as special prosecutor from this date forward.

¶ 92. The per curiam immediately goes astray when it states that "[b]ecause we are presented with [the Special Prosecutor's] continued filings .. . we now must address the underlying legal question of [the Special Prosecutor's] authority to act as the special prosecutor . .. ,"[36] "Now?" "Must?" Really? The issue of the Special Prosecutor's authority was addressed by the court of appeals and this court in the supervisory writ action by three Unnamed Movants.
¶ 93. Addressing the issue of the Special Prosecutor's appointment and authority, the July 16, 2015 majority opinion affirmed the court of appeals, holding that John Doe Judge Kluka's appointment of the Special Prosecutor did not violate a plain legal duty.[37] Thus, the Special Prosecutor's authority remained intact.
¶ 94. A majority of the justices joined the part of Justice Prosser's concurrence concluding that "Judge Kluka's appointment of the Special Prosecutor was invalid."[38]
¶ 95. The per curiam is correct that Justice Gableman's majority opinion controls.[39]
¶ 96. By joining both Justice Gableman's majority opinion and Justice Prosser's concurrence, four justices created at least two sets of votes that logically *398 do not align: The four justices held that the Special Prosecutor's appointment was simultaneously valid and invalid. Compare majority op., ¶¶ 132 n.43, 137, Justice Ziegler's concurrence to majority op., ¶¶ 309, 340, and Justice Prosser's concurrence to majority op., ¶¶ 149,239,306.
f 97. The four justices attempt to mask this logical inconsistency. The per curiam creates an artificial distinction between the "legal ruling" in Justice Gableman's July 16, 2015 majority opinion that John Doe Judge Kluka's appointment of the Special Prosecutor did not violate a plain legal duty and the "reality shown" by the "legal conclusion" in Justice Prosser's concurrence that the Special Prosecutor's appointment was invalid.[40] These labels, "legal ruling," "legal conclusion," and "reality shown," are devoid of any meaning and should not obscure the fact that in the opinions issued on July 16, 2015, four justices voted that the Special Prosecutor's appointment was simultaneously valid and invalid, or that the per curiam reverses the July 16, 2015 majority opinion's conclusion regarding the validity of the Special Prosecutor's appointment and authority.
¶ 98. These conflicting votes of the four justices resulted, I believe, from a change in this court's internal operating procedures for processing and mandating opinions. Since the change was adopted in September 2014, the court no longer discusses draft opinions in conference unless a majority of justices votes to do so.[41] From September 2014 to June 2015, no in person *399 court conference was held on any draft opinion, including the drafts in the John Doe trilogy.
¶ 99. Thoughtful discussion and careful collegial review of the draft opinions in the John Doe trilogy would have revealed the internally contradictory nature of the several opinions joined in different parts by four justices.
¶ 100. Although the July 16, 2015 majority opinion applied the correct, limited standard of review for a writ proceeding,[42] the per curiam does an about-face. The per curiam overreaches and "makes a legal ruling"[43] that the Special Prosecutor lacks authority to act as special prosecutor from the date of the per curiam forward.[44]
¶ 101. This conclusion is misguided for several reasons.
¶ 102. First, the per curiam reargues an issue already argued and considered. A motion for reconsideration "is not intended to be an opportunity to reargue issues already argued and considered. Rather, the primary purpose [of reconsideration] is to alert the court to errors or omissions in its decision."[45] The per curiam does not assert that any error or omission appears in the majority opinion's conclusion that the Special Prosecutor's appointment remains intact.
*400 ¶ 103. Second, under the per curiam's logic, the Special Prosecutor's authority to proceed would still be intact if he had not brought a motion for reconsideration.[46] Does this make sense? Not to me.
¶ 104. Third, only Unnamed Movants 2, 6, and 7 challenged the appointment and authority of the Special Prosecutor.[47] The other Unnamed Movants did not raise this issue. Why does the per curiam not hold that the other Unnamed Movants forfeited the argument that the Special Prosecutor lacked authority? The per curiam does not even consider this question. In contrast, the per curiam is quick to hold that the Special Prosecutor forfeited his argument that the John Doe II investigation should continue into investigating coordinated express advocacy.[48]
¶ 105. Fourth, the per curiam applies two different rules to the two petitions for supervisory writs. In the petition brought by three Unnamed Movants for a supervisory writ invalidating the appointment and authority of the Special Prosecutor, the per curiam " 'transform [s] the writ into an all-purpose alternative to the appellate review process . . . .' "[49] by concluding *401 that the Special Prosecutor's appointment is invalid without regard to the limited nature of this court's review of a decision on a supervisory writ.
¶ 106. In contrast, relying on the limited nature of the writ proceeding,[50] the per curiam bars relief to the Special Prosecutor on his petition for a supervisory writ to reverse the John Doe Judge's decision to quash the subpoenas and search warrants.
¶ 107. These two approaches seem inconsistent and result-oriented.
¶ 108. In addition to faulty "analysis," the per curiam fails to provide any assistance, resources, or compensation to the Special Prosecutor when he is implementing the new "clear and hold" mandate and fulfilling his new functions. The four justices impose an unfunded mandate on someone, but we do not know who that someone is. The record is unclear whether the Special Prosecutor has been compensated for all his work and whether he is now being compensated.
¶ 109. In sum, the per curiam's rationale simply seems invented to justify the pre-ordained desired result.

*402
3. In terminating the authority of the Special Prosecutor, the per curiam unfairly leaves the prosecution and the State unrepresented from this date forward and deprives the Special Prosecutor, prosecutors, and law enforcement officers of the opportunity to preserve materials from destruction.

¶ 110. The per curiam recognizes that its ruling that the Special Prosecutor cannot continue to act in his official capacity "has the potential to create problems with respect to who may act on behalf of the prosecution in this court or elsewhere going forward."[51] The four justices should have seen this problem coming, but they did not. Now, the per curiam does next to nothing to resolve it.
¶ 111. The per curiam suggests that one or more of the five district attorneys whose petitions to commence John Doe proceedings started this investigation might seek to intervene to represent the prosecution and State in future proceedings.[52] The per curiam assures the reader that such a motion to intervene would receive prompt attention, but does not assure that such a motion would be granted.[53]
¶ 112. The four justices have already explicitly denied a motion to add the five district attorneys as parties, even though the Three Unnamed Petitioners warned more than a year and a half ago that if the five district attorneys were not joined and the court concluded that the Special Prosecutor could not continue to act in his official capacity, the prosecution would be *403 left entirely unrepresented.[54] As the Three Unnamed Petitioners wrote (see Attachment C), the five district attorneys had an interest in the outcome of the John Doe trilogy and would incur significant expenses depending on the outcome:
[I]f the petitioners are correct on the merits, the appointment of the special prosecutor was improper at the outset and is unsustainable now. Each of the five district attorneys would have to proceed without him and without the state Department of Administration shouldering much of the prosecutorial costs of these proceedings. Accordingly, these five district attorneys necessarily have an actual and non-speculative interest in the outcome of this case. That interest is distinct from the interests of all other parties.[55]
¶ 113. Now, despite the Three Unnamed Petitioners' clear warnings, the per curiam engages in revisionist history, stating that "at that point in time there was no need to add the district attorneys as parties because the prosecution was represented by . . . the special prosecutor."[56] But the need was clear and the problem was foreseeable. Now, at this late date, after the majority opinion has terminated the investigation, even if one or more of the district attorneys were allowed to intervene, an overwhelming amount of materials would have to be scrutinized and absorbed in order for a district attorney to get up to *404 speed on this legally and factually complex case. The learning curve to assume responsibility for challenging past orders and opinions of this court and for representing the State in all future legal proceedings would be steep and time consuming. Such intervention might impose significant expenses on the counties.
¶ 114. Even though no one represents the prosecution and state going forward, an order issued today (in which I dissent) refuses to allow investigators and a law enforcement officer to intervene for the limited purpose of preserving certain materials from the John Doe investigations from destruction.[57] A third motion to intervene for the same limited purpose filed by a district attorney and two assistant district attorneys is being ignored, without explanation.
¶ 115. The per curiam errs in denying the motions for limited intervention.
¶ 116. Limited intervention is required to protect rights. Denying the motions for limited intervention, especially when the Special Prosecutor cannot continue acting as such, demonstrates hostility to the Special Prosecutor, the "prosecution team," and the State on the part of the four justices. The July 16, 2015 majority opinion is critical of the conduct of the Special Prosecutor, prosecutors, and law enforcement officers, including their conduct in execution of the search warrants. The criticism is piled on even though there is no evidence or factual findings in the record to support this criticism or to describe the execution of the search warrants.[58] Baseless attacks *405 by this court on the Special Prosecutor, prosecutors, and law enforcement officers (or on anyone else) are, in my opinion, inexcusable.
¶ 117. Since July 16, 2015, these attacks in the majority opinion have been cited as verifying that the Special Prosecutor, prosecutors, and law enforcement officers in the John Doe investigations were engaged in misconduct. For example, the Amended Complaint in Archer v. Chisholm, No. 15-cv-922-LA (E.D. Wis.), Docket No. 17, describes the July 16, 2015 majority opinion as "finding" and "holding" that the Special Prosecutor, prosecutors, and law enforcement officers "instigated 'a perfect storm of wrongs that was visited upon the innocent' targets 'and those who dared to associate with them.' "[59]
¶ 118. The Amended Archer Complaint, under the heading "The Wisconsin Supreme Court's Repudiation of the Investigation," also alleges that the July 16, 2015 majority opinion "found that the targets of the investigation were victims of 'the tyrannical retribution of arbitrary or capricious government prosecution' "[60] and "found" that they "subjected targets to 'paramilitary-style home invasions conducted *406 in the pre-dawn hours' in retaliation for their free speech . . . ."[61]
¶ 119. In contrast, the material released from John Doe files apparently has proved helpful to prosecutors and law enforcement officers in cases in which their conduct has been challenged. See, e.g., O 'Keefe v. Schmitz, No. 14-C-139, 2014 WL 1379934, at *8 (E.D. Wis. Apr. 8, 2014), rev'd in part sub nom. O'Keefe v. Chisholm, 769 F.3d 936 (7th Cir. 2014), cert. denied, 135 S. Ct. 2311 (2015) (citing sealed material from John Doe II in discussing immunity under 42 U.S.C. § 1983).
¶ 120. The use of released John Doe I materials in the Archer case has apparently caused a modification of the claims of abusive behavior by those who executed the search warrants.[62]
¶ 121. Now, the very same four justices who criticized the prosecutors and law enforcement officers for their participation in the John Doe II investigation deny the movants (who are government officers and employees) the opportunity to intervene for the limited purpose of preserving materials, including audio re *407 cordings, that they assert reveal the truth about the John Doe II investigation, including execution of the search warrants.
¶ 122. Instead, the per curiam suggests that the materials to be held by the Clerk of the Supreme Court "could also potentially be available for use in related civil proceedings, if there is a request and a determination that such use is proper under the circumstances."[63] This aside is yet another "too little, too late" aspect of the per curiam.
¶ 123. The per curiam's aside is too little: it gives no assurance that the materials to be held by the Clerk will be available for prosecutors and law enforcement officers' defenses in civil proceedings stemming from the John Doe investigations at all, let alone that they will be preserved until the applicable statutes of limitations have run. The per curiam also gives too little direction to non-parties on how to request access to the materials and what requests would be "proper under the circumstances."[64]
¶ 124. The per curiam is too late: Now that the prosecution is totally unrepresented in future proceedings in these cases, and limited intervention has been denied, nobody is left to advocate for the preservation of these materials for use in proceedings stemming from the John Doe investigations.
¶ 125. Will this aspect of the per curiam be subject to challenge as due process gone awry?

*408
4. The question remains whether the per curiam is impeding review by the United States Supreme Court by terminating the authority of the Special Prosecutor.

¶ 126. On another topic relating to the termination of the authority of the Special Prosecutor, the per curiam explicitly addresses the issue of who may seek review in the United States Supreme Court. The per curiam declares that its "decision to terminate [the Special Prosecutor's] authority is not meant to interfere with the ability of the prosecution team to seek Supreme Court review."[65] Who is the "prosecution team?" The per curiam uses the phrase "prosecution team" 32 times. The phrase is never defined. Isn't the Special Prosecutor a member of the "prosecution team," and thus eligible to seek Supreme Court review under the per curiam's approach?
¶ 127. The per curiam recasts my point about the inability to identify members of the prosecution team as "implying that there was no group of prosecutors, investigators and others who prosecuted the John Doe II investigation, and that [the Special Prosecutor] worked alone in prosecuting the John Doe II."[66] Clearly there were prosecutors, investigators, and others involved in the John Doe II investigation. Obviously the Special Prosecutor did not work alone. However, the "prosecution team" is nowhere depicted as a static group of people. Didn't people serve with the Special Prosecutor and then leave the task? Didn't new people periodically join the Special Prosecutor? The per curiam does not say who the members of the prosecution team are or who may replace the Special *409 Prosecutor for numerous purposes, including United States Supreme Court review.
¶ 128. The per curiam further declares that it wants to "avoid [] impeding in any way the ability of the prosecution team to seek certiorari review in the United States Supreme Court."[67] Nevertheless, the Special Prosecutor is the only person named in the John Doe trilogy as representing the prosecution.
¶ 129. I agree with the four justices joining the per curiam that in the interests of federalism, comity, and the supremacy of federal law,[68] the per curiam should not place roadblocks in the way of federal review of the decisions in the John Doe trilogy.
¶ 130. What a mess this court has wrought!

5. Based on its erroneous conclusion that the Special Prosecutor never presented evidence of illegally coordinated express advocacy to the John Doe Judge, the per curiam erroneously concludes that the investigation into coordinated express advocacy cannot continue.

¶ 131. The Special Prosecutor's motion for reconsideration seeks an order permitting the John Doe investigation to continue as to coordinated express advocacy — a valid legal theory even under the majority opinion's flawed, absolutist interpretation that "Anything Goes" with regard to issue advocacy.[69]
¶ 132. The late Justice N. Patrick Crooks and I dissented from the July 16, 2015 majority opinion, in part because the majority opinion failed to consider *410 this evidence.[70] The per curiam, like the majority opinion, avoids addressing this issue, this time hiding behind the doctrine of forfeiture and applying a limited standard of review to the Special Prosecutor's petition for a supervisory writ.[71]
¶ 133. The record demonstrates that the investigation of coordinated express advocacy should proceed. Unlawful coordination, not merely unlawful coordinated issue advocacy, has been the focus of the John Doe investigation from the very beginning.
¶ 134. For example, on May 31, 2013, Wisconsin Attorney General J.B. Van Hollen wrote to the Milwaukee County District Attorney declining to participate in the John Doe investigation. The letter describes the John Doe investigation as "relating to potential campaign finance violations involving campaign coordination."[72] The letter explains elsewhere that the specific area of campaign finance law that may be applicable to the investigation is "coordination."[73] No reference is made in this letter to either issue advocacy or express advocacy. Rather, coordination is the prominent theme of the letter discussing the investigation.
¶ 135. Another example showing that coordination, not merely coordinated issue advocacy, was the *411 focus of the investigation is the August 10, 2012 petition to commence the John Doe proceedings. The petition focuses on coordination, and is not limited to express or issue advocacy. The petition states that the investigation will focus on violations of Wis. Stat. ch. 11, and in particular on the coordination of personal political campaign committees and '501(c)(4)' organizations to circumvent the restrictions of ch. 11.[74]
¶ 136. Likewise, the affidavits underlying search warrants and subpoenas addressed evidence of coordination, not limited to evidence of coordinated issue advocacy or coordinated express advocacy.[75]
¶ 137. That no distinction was made between coordinated express advocacy and coordinated issue advocacy in these documents is not surprising. The emphasis on investigating coordination, regardless of whether the coordination was of issue advocacy or express advocacy, was supported by federal and Wisconsin law at the time. The law did not establish an inflexible distinction or set up a rigid barrier between coordinated issue advocacy and coordinated express advocacy for all purposes.[76]
*412 ¶ 138. In granting review in the John Doe trilogy, this court asked the parties to address "[w]hether the records in the John Doe proceedings provide a reasonable belief that Wisconsin law was violated by a campaign committee's coordination with independent advocacy organizations that engaged in express advocacy speech. If so, which records support such a reasonable belief?"[77]
¶ 139. According to the record, evidence of coordinated express advocacy on which the Special Prosecutor relies was presented both to the John Doe Judge and to this court. The per curiam errs in concluding that the Special Prosecutor forfeited his argument that the search warrants and subpoenas were valid because they sought evidence of coordinated express advocacy.[78]
*413 ¶ 140. I agree with the following statements in Justice Crooks' concurring and. dissenting opinion to the July 16, 2015 majority opinion, stating at ¶ 561 as follows:
It is also imperative to note that the majority conveniently overlooks the special prosecutor's secondary argument of criminal activity in [the majority's] effort to end this John Doe investigation. Specifically, the special prosecutor seeks to investigate whether particular express advocacy groups coordinated their spending with candidates or candidate committees in violation of their sworn statement of independence under Wis. Stat. § 11.06(7). Despite the fact that the special prosecutor utilizes a significant portion of his brief to present evidence of such illegal coordination, the majority [opinion] determines, without explanation, that the John Doe investigation is over.
¶ 141. The John Doe Judge made clearly erroneous factual findings when he stated that the "State is not claiming that any of the independent organizations expressly advocated,"[79] and "[t]here is no evidence of express advocacy"[80] justifying the issuance of a supervisory writ.
¶ 142. After the John Doe Judge accepted the Unnamed Movants' arguments distinguishing between coordinated express advocacy and coordinated issue advocacy, the Special Prosecutor raised the issue *414 of coordinated express advocacy in his court of appeals petition for supervisory writ. This court granted bypass to review the issue.[81]
¶ 143. The legal arguments and evidence the Special Prosecutor presented to the John Doe Judge and to this court provide "reason to believe" a crime was committed by coordinated express advocacy. The Special Prosecutor need not prove a criminal violation at the inception of the John Doe investigation and need not demonstrate probable cause at the outset. All that the Special Prosecutor must demonstrate is a "reason to believe" a crime was committed.[82] He has done so.
¶ 144. Accordingly, reconsideration should be granted and the investigation into coordinated express advocacy should continue.

6 . The per curiam constructs the "clear and hold" mandate in a factual vacuum and the mandate will require further clarification. Indeed the Unnamed Movants do not agree in their recommendations to the court about the disposition of the materials.

¶ 145. The per curiam's "clear and hold" mandate is built on a shaky foundation. It will not hold up under the stress of implementation. The per curiam constructs its new mandate out of whole cloth by piecing together information about what investigative materials exist and their location from the parties' filings, without any guarantee that these facts and arguments are correct or exhaustive. Simply put, the *415 four justices do not have the facts. They are writing in a factual vacuum, issuing the per curiam mandate in the dark.
¶ 146. The per curiam compounds this error by crafting its new mandate without notice to the parties and without giving them an opportunity to address what materials should be "cleared" and how they should be "held."
¶ 147. Ignoring the Special Prosecutor's admonition about the risks of issuing an order not fully understanding the items and materials at issue, the per curiam offers explicit instructions for different types of materials.
¶ 148. The court does not have access to all these materials and lacks full knowledge about each of them or their value to the Special Prosecutor, the "prosecution team," the Unnamed Movants, or the "universe of individuals" of which the per curiam writes. Especially significant is that the Unnamed Movants do not agree in their recommendations to the court about what should be done with different kinds of materials. Parties on both sides of the "v." disagree about the materials involved.
¶ 149. Given this disagreement and uncertainty about the materials involved, it is likely that the per curiam's "clear and hold" mandate, like the July 16, 2015 majority opinion's "search and destroy" mandate, cannot be implemented without further interpretation, clarification, and modification.
7. The per curiam is unclear about whom it binds.
¶ 150. The per curiam imposes obligations not only on the Special Prosecutor but also on unnamed *416 persons, including the undefined "prosecution team."[83] As I have stated previously, the per curiam uses the undefined phrase "prosecution team" 32 times. To what extent does the majority opinion or per curiam bind anyone other than the two Unnamed Movants who filed the original action or the eight Unnamed Movants and the Special Prosecutor? Not clear![84]

8 . The per curiam ignores the Special Prosecutor's argument that evidence obtained through the subpoenas and search warrants should be retained under the good faith exception in Fourth Amendment suppression jurisprudence.

¶ 151. The per curiam recognizes that the Special Prosecutor's authority was intact when the subpoenas and search warrants were issued.[85] The subpoenas and search warrants were based on the campaign finance laws existing at that time regulating coordinated advocacy.[86]
¶ 152. The per curiam does not address the Special Prosecutor's reliance on the "good faith exception" in Fourth Amendment suppression jurisprudence to *417 support retention of John Doe evidence that need not be suppressed in subsequent criminal proceedings.

9. The per curiam leaves many foreseeable questions unanswered.

¶ 153. Some of the foreseeable but unanswered questions are as follows:
• How will the parties and interested non-parties be able to access the materials to be maintained under seal by the Clerk of the Supreme Court?[87]
• At least one federal civil rights lawsuit arising out of the John Doe investigations is currently pending and others will likely be filed in the future.[88] How will the court address the interests of persons involved in these lawsuits if they seek access to or use of these materials? Will these materials be preserved until the applicable statutes of limitations have run? What effect, if any, do the recent statutory revisions to the John Doe statutes have on these questions?[89]
• What continuing authority, if any, do the two John Doe Judges have? May materials continue to be filed before the John Doe Judges or only in this court? What is the authority of the John Doe Judge over materials, including motions, filed with the John Doe Judge after the records *418 were sent to this court in January 2015?[90] May the John Doe judge continue to issue orders authorizing the release of materials seized in the investigations for use in the defense of pending lawsuits? What effect, if any, do the recent statutory revisions to the John Doe statutes have on these questions?[91]
• To what extent does the majority opinion or per curiam bind anyone other than the two Unnamed Movants who filed the original action or the eight Unnamed Movants and the Special Prosecutor?
• What is the significance of the secrecy and record inspection provisions of Wis. Stat. § 968.26(3) (2013-14) in these proceedings?
• How will the court address present and future matters before the court (of which there are many) in the absence of any representation for the prosecution and State?
¶ 154. These questions are not merely hypothetical or conjectural; they are immediately relevant to the majority opinion, the per curiam, and motions and *419 other filings currently pending before the court. The per curiam's attempts to resolve issues are piecemeal, superficial, and temporary. The per curiam ensures that the John Doe trilogy will continue to dominate the court's work immediately and for a long time to come.
¶ 155. I repeat, in response to the motion for reconsideration, the per curiam significantly modifies the July 16, 2015 majority opinion by creative writing devoid of supporting legal authority. Furthermore, events subsequent to the motion for reconsideration have overtaken the per curiam. In sum, the per curiam embraces confusing and conflicting positions, all the while leaving many important issues unresolved, including those posed by events subsequent to the motion for reconsideration.
¶ 156. For the reasons set forth, I concur in part, dissent in part, and write separately.
*420 ATTACHMENT A; All Sealed Filings After 7/16/15
[[Image here]]
*421 [[Image here]]
*422 ATTACHMENT B
[[Image here]]
*423 [[Image here]]
*424 [[Image here]]
*425 ATTACHMENT C
[[Image here]]
*426 [[Image here]]
*427 [[Image here]]
*428 [[Image here]]
*429 ATTACHMENT D
[[Image here]]
*430 [[Image here]]
*431 [[Image here]]
*432 [[Image here]]
*433 [[Image here]]
*434 [[Image here]]
*435 [[Image here]]
*436 [[Image here]]
*437 [[Image here]]
*438 ATTACHMENT E
[[Image here]]
*439 [[Image here]]
*440 [[Image here]]
*441 [[Image here]]

 Throughout my writing, I will refer to Justice Gable-man's July 16, 2015 majority opinion as such, or as "the majority opinion." The full citation to the majority opinion is State ex rel. Two Unnamed Petitioners v. Peterson, 2015 WI 85, 363 Wis. 2d 1, 866 N.W.2d 165. I refer to today's per curiam opinion denying the Special Prosecutor's motion for reconsideration as "the per curiam."

 For an example of the court granting rather than denying a motion for reconsideration in order to clarify a previous decision, see State v. Johnson, 2014 WI 16, 353 Wis. 2d 119, 846 N.W.2d 1. See also Wis. S. Ct. IOP II. J. (governing reconsideration).

 See Wis. Stat. § 968.26(4)(a) (2015); 2015 Wis. Act 64, §12j.

 Per curiam, ¶ 9 n.4. The per curiam's reference to 2015 Act 64 is ambiguous. Does it mean that the per curiam views Act 64 as applying (or not applying) to John Doe II?
In addition to 2015 Wis. Act 64, which Unnamed Movant 2 discusses in its motion, the per curiam also cites 2015 Wis. Act 55 (effective July 13, 2015), which modifies the Special Prosecutor statute. See Wis. Stat. § 978.045(lr)(bm) (2015).

 The order denying limited intervention and my separate writing is attached hereto as Attachment D. The order denying the motion to remand matters to John Doe Judge Peterson and my separate writing is attached hereto as Attachment E.

 "No opinion issued by the Supreme Court, or by any court of appeals, establishes ('clearly' or otherwise) that the First Amendment forbids regulation of coordination between campaign committees and issue-advocacy groups — let alone that the First Amendment forbids even an inquiry into that topic." O'Keefe v. Chisholm, 769 F.3d 936, 942 (7th Cir. 2014), cert. denied, 135 S. Ct. 2311 (2015).

 Del. Strong Families v. Att'y Gen., 793 F.3d 304, 308 (3d Cir. 2015) (quoting McConnell v. FEC, 540 U.S. 93, 193 (2003)) (emphasis added); see also Lyle Denniston, Constitution Check: What's the Next Big Controversy on Campaign Finance, Constitution Daily (July 21, 2015), http ://blog. constitutioncenter. org/2015/07/constitution-check-whats-the-next-big-controversy-on-campaign-finance/ (last visited Nov. 5, 2015) (describing the Third Circuit's decision and the Wisconsin John Doe trilogy as conflicting).

 The majority opinion affirmed the court of appeals' decision, leaving the Special Prosecutor's appointment and authority intact. Majority op., ¶ 132 ("Because the Unnamed Movants have not established that Reserve Judge Kluka violated *386 a plain legal duty in appointing the special prosecutor, we deny their petition for a supervisory writ and affirm the court of appeals."); see also majority op., ¶ 137.

 Per curiam, ¶ 11. The Special Prosecutor's authority to act as special prosecutor "is prospectively voidable .. . ." Per curiam, ¶ 12 n.5.
The per curiam intimates that the Special Prosecutor may seek reconsideration or review of this aspect of the per curiam decision terminating his authority. Per curiam, ¶ 16 n.6.

 See Attachment C, attached, at 4.

 See December 16, 2014 order granting review, at 7; see also December 16, 2014 order granting review, at ¶ 4 (Abrahamson, C.J., concurring) ("[T]he five district attorneys ..., in my opinion, should be made parties as requested.").

 Per curiam, ¶¶ 28-29.

 Majority op., ¶ 135.

 During the Vietnam War, United States forces employed two counterinsurgency strategies. The first involved "search and destroy" missions, whereby forces would be inserted into hostile territory to search out the enemy, attack them and their supplies, and quickly withdraw. The second strategy involved efforts to "clear and hold." They focused on maintaining control of important agricultural areas and population centers. See Gordon L. Rottman, Vietnam Infantry Tactics 61 — 62 (2011).

 Per curiam, ¶¶ 28-37.

 The per curiam sets forth specific times by which the Special Prosecutor must implement various aspects of the new "clear and hold" mandate.
Computer hardware and other items of "tangible personal property" are to be returned to their owners within 30 days of *389 the per curiam's release. Per curiam, ¶ 31. Written notice must also be provided within 30 days of the per curiam "to all individuals and organizations whose documents or electronic data were obtained by the prosecution .. .." Per curiam, ¶ 37. The remainder of the per curiam's "clear and hold" mandate must be implemented within 30 days of the completion of proceedings in the United States Supreme Court or 30 days after the deadline to file a petition for writ of certiorari, if no petition is filed. Per curiam, ¶ 29.

 Per curiam, ¶ 29.

 Per curiam, ¶ 37.

 The John Doe investigations have spawned a number of lawsuits alleging, among other things, civil rights violations by *390 the prosecutors and law enforcement officers, and unlawful activities by the Government Accountability Board. See, e.g., O'Keefe v. Chisholm, 769 F.3d 936 (7th Cir. 2014), cert. denied, 135 S. Ct. 2311 (2015); Archer v. Chisholm, No. 15-cv-922—LA (E.D. Wis.); O'Keefe v. Wis. Gov't Accountability Bd., No. 2014CV1139 (Waukesha Cnty. Cir. Ct.).

 Per curiam, ¶ 38.

 The per curiam does not explain whether making materials available for use in related litigation is consistent with the revised John Doe statutes. See Wis. Stat. § 968.26(4)(a)-(b) (2015). Unnamed Movant No. 2's motion argues that Wis. Stat. § 968.26(4)(b) bars at least John Doe Judges Peterson and Nettesheim from authorizing the disclosure of materials going forward. Nonetheless, Unnamed Movant No. 2's motion also suggests that this court may allow the use and production of certain materials, like investigators' notes or memoranda, in civil litigation.

 See, e.g., Collin Levy, The Wisconsin Targets Tell Their Story, Wall St. J., July 22, 2015; M.D. Kittle, John Doe Horror Stories: 'I felt completely helpless in my own home,' WisconsinWatchdog.org, July 23, 2015, available at http://watchdog.org/230683/john-doe-deborah-jordahl-raids/.

 Per curiam, ¶¶ 28-36.

 See All the President's Men (Warner Bros. 1976).

 See 2015 Wis. Act 64; 2015 Wis. Act 55.
This part of the revisions of the John Doe statutes raises the question of whether Section 12j terminates the secrecy orders entered in John Doe I and John Doe II, and if so, whether Section 12j violates the separation of powers doctrine.

 2015 Wis. Act 64, Section 12j states in full:
"A secrecy order entered under section 968.26 of the statutes that is in effect on the effective date of this subsection may apply only to persons listed in section 968.26(4)(a) of the statutes, as created by this act. A secrecy order covering persons not listed in section 968.26(4)(a) of the statutes, as created by this act, is terminated on the effective date of this subsection."
*392 See also Wis. Stat. § 968.26(4)(a).

 2015 Wis. Act 64, § 12j.

 The only documents not under seal are Justice Prosser's separate writing explaining his rationale for denying a motion for his recusal, and documents that I filed.
In addition to the new filings placed under seal, some redactions relating to documents filed before July 16, 2015, still remain unresolved, even after the court released many other redacted documents in the lead-up to the July 16, 2015 opinions.

 At least redacted versions of the parties' briefs and other documents were publicly available relating to the July 16,2015 majority opinion.

 Another example is the Special Prosecutor's motion for reconsideration. The motion makes predominantly legal arguments and does not disclose the identity of the Unnamed Movants, the specific contents of any document or information obtained in the John Doe investigation, or any information that appears objectionable to either the prosecution or the Unnamed Movants.

 See, e.g., Press-Enters. Co. v. Superior Court, 464 U.S. 501, 508-10 (1984); Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 580 & n.17 (1980); In re Providence Journal Co., 293 F.3d 1, 13 (1st Cir. 2002); Grove Fresh Distrib., Inc. v. Everfresh Juice Co., 24 F.3d 893, 897 (7th Cir. 1994); Brown & Williamson Tobacco Corp. v. Fed. Trade Comm'n, 710 F.2d 1165, 1177-81 (6th Cir. 1983).

 Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 571 (1980) (quotation omitted) (alteration in original).

 See Brown & Williamson Tobacco Corp. v. Fed. Trade Comm'n, 710 F.2d 1165, 1176 (6th Cir. 1983) ("[W]e conclude that the District Court erred by failing to state findings or conclusions which justify nondisclosure to the public. The order of the District Court sealing the documents in the case is, therefore, vacated.").

 Unnamed Movant No. 2's filing points out that much of the material filed under seal has been released by court orders and suggests that a substantial amount of the materials under seal in this court may be unsealed consistent with concerns about revealing the names of the Unnamed Movants or others who were investigated. See also my concurrence/dissent to the majority op., ¶¶ 501 — 506.

 See, e.g., Jason Stein & Mary Spicuzza, More Documents Leaked in John Doe Case, Milwaukee J. Sentinel (Sept. 17, 2015); Molly Beck, Emails raise questions of impartiality, suggest Scott Walker was target of John Doe, Wis. State J. (Aug. 29, 2015); Editorial, We 'the Sheeple', Wall St. J. (Aug. 27, 2015).

 Per curiam, ¶ 8.

 Majority op., ¶¶ 132, 137.

 Justice Prosser's concurrence to majority op., ¶ 239.

 Per curiam, ¶ 7 & n.3.

 See per curiam, ¶¶ 7-9.

 The procedure adopted in September 2014 for processing opinions is set forth in full in State v. Gonzalez, 2014 WI 124, ¶ 30-31, 359 Wis. 2d 1, 856 N.W.2d 580 (Abrahamson, C.J., concurring).

 Majority op., ¶¶ 127-28 & n.41.

 Per curiam, ¶ 12.

 Per curiam, ¶¶ 2, 11. In contrast, the per curiam relies on the limited standard of review in writ proceedings to hold that the Special Prosecutor could not prevail on his argument that the John Doe investigation should proceed as to coordinated express advocacy. Per curiam, ¶ 27.

 See Michael S. Heffernan, Appellate Practice and Procedure in Wisconsin § 22.4 (2014).

 See per curiam, ¶ 16.

 See my concurrence/dissent to the majority op., ¶¶ 542, 554.

 Per curiam, ¶¶ 23-24.

 Majority op., ¶ 137 (quoting State ex rel. Kalal v. Circuit Court, 2004 WI 58, ¶ 24, 271 Wis. 2d 633, 681 N.W.2d 110).
The per curiam relies on Kalal to justify its decision on the underlying legal issue, namely that the appointment of the Special Prosecutor was invalid. Kalal is inapposite. The Kalal court held that the Kalals failed to establish the existence of a plain legal duty and were not entitled to a supervisory writ. 271 Wis. 2d at ¶ 26. The Kalal court went on to discuss the statutory interpretation question presented but did not change its result, that is, the court's conclusion remained that the *401 Kalals were not entitled to a supervisory writ because no plain legal duty existed. 271 Wis. 2d at ¶ 57.
In the instant case, the July 16, 2015 majority opinion declared that the parties were not entitled to a supervisory writ because no plain legal duty existed. Majority op., ¶ 137. The per curiam decides the underlying legal issue and now reverses the majority opinion's denial of the supervisory writ.

 Per curiam, ¶ 27.

 Per curiam, ¶ 16.

 Per curiam, ¶ 19.

 Per curiam, ¶ 19.

 See December 16, 2014 order granting review, at 7 (denying a motion to make the district attorneys parties); see also December 16, 2014 order granting review, at ¶ 4 (Abrahamson, C.J., concurring) ("[T]he five district attorneys ... in my opinion, should be made parties as requested.").

 See Petitioners' Motion to Add Five Respondents 4 (Feb. 19, 2014).

 Per curiam, ¶ 17.

 See the order of even date denying motions for limited intervention.

 The majority opinion and Justice Ziegler's concurrence to the majority opinion relied on facts that were not in the record, citing blogs and media reports as authoritative sources *405 on how the search warrants were executed. See, e.g., majority op., ¶¶ 28, 68; Justice Ziegler's concurrence to the majority op., ¶¶ 320 & n.10, 326-29 & nn.12-22.

 Archer v. Chisholm, No. 15-cv-922-LA (E.D. Wis.), Dkt. No. 17, at ¶ 96 (internal quotation marks omitted) (quoting majority op., ¶ 133).

 Archer v. Chisholm, No. 15-cv-922-LA (E.D. Wis.), Dkt. No. 17, at ¶¶ 95 — 96 (internal quotation marks omitted) (quoting majority op., ¶ 133).

 Archer v. Chisholm, No. 15-cv-922-LA (E.D. Wis.), Dkt. No. 17, at ¶ 97 (internal quotation marks omitted) (quoting majority op., ¶ 68).

 See Archer v. Chisholm, No. 15-cv-922-LA (E.D. Wis.), Dkt. No. 17; Daniel Bice, Audio of John Doe Raid Contradicts Claims by Longtime Scott Walker Aide, Milwaukee J. Sentinel, Aug. 4, 2015, available at http://www.jsonline.com/blogs/news/320568172.html; Scott Bauer, Audio contradicts Scott Walker aide's description of raid, Wis. State J., Aug. 5, 2015, available at http://host.madison.com/wsj/news/local/govt-andpolitics/audio-contradicts-scott-walker-aide-s-description-ofraid/article_64e5ec3a-3b65-57e8-bc2c-f9a0dc37e505.html.

 Per curiam, ¶ 38.

 Per curiam, ¶ 38.

 Per curiam, ¶ 16 (emphasis added).

 Per curiam, ¶ 18 n.7.

 Per curiam, ¶ 29 (emphasis added).

 U.S. Const, art. VI, cl. 2.

 See my concurring/dissenting opinion to the majority op., ¶ 348.

 See Justice Crooks' concurrence/dissent to the majority opinion, ¶¶ 559-63; see also my concurrence/dissent to the majority op., ¶ 352 n.ll.

 See per curiam, ¶¶ 25 — 26. In contrast, this very limited standard of review is ignored, as I have stated, by the per curiam in terminating the Special Prosecutor's appointment and authority from this date forward. Per curiam, ¶¶ 6, 7.

 See App'x to Response Brief of Special Prosecutor, vol. 1, at 090 (emphasis added).

 See App'x to Response Brief of Special Prosecutor, vol. 1, at 090.

 A 501(c)(4) is described in the record as an organization able to involve itself in express advocacy, provided that "supporting or opposing candidates" does not become the organization's primary purpose.

 Affidavits for search warrants and subpoenas state that the use of the 501(c)(4)s was alleged to be for the purpose of circumventing the reporting and contribution provisions of Wis. Stat. §§ 11.10(4), 11.06(1), and 11.27(1), which would constitute a violation of Wis. Stat. §§ 11.26, 11.27, and 11.61(l)(b).

 See, e.g., McConnell v. FEC, 540 U.S. 93, 193 (2003) (stating there is no "rigid barrier between express advocacy and so-called issue advocacy"); Wis. Coalition for Voter Participation v. State Elections Bd., 231 Wis. 2d 670, 682, 605 N.W.2d *412 654 (Ct. App. 1999) (stating "we think the [State Elections] Board was correct in observing... that '[i]f the mailing and the message were done in consultation with or coordination with the Justice Wilcox campaign, the [content of the message] is immaterial") (quotation omitted) (some alterations in original).
It is the majority opinion that erroneously erected a rigid barrier between coordinated issue advocacy and express advocacy on July 16, 2015, long after the investigation began.

 See December 16, 2014 order granting review at #10.
Care must be taken when reading the word "independent" in such phrases as "independent organizations," "independent disbursement committees," or "independent advocacy organization" in the December 16, 2014 court order granting review, the July 16, 2015 majority opinion and the per curiam. The word "independent" should be considered to be in quotation marks "because the Special Prosecutor suspected that the group's independence is ostensible rather than real." O'Keefe v. Chisholm, 769 F.3d 936, 937 (7th Cir. 2014), cert. denied, 135 S. Ct. 2311 (2015).

 Moreover, even if a party forfeits an issue by failing to raise it first in a prior proceeding, "we have discretion to *413 disregard alleged forfeiture or waiver and consider the merits of any issue because the rules of forfeiture and waiver are rules of 'administration and not of power.'" State v. Beamon, 2013 WI 47, ¶ 49, 347 Wis. 2d 559, 830 N.W.2d 681 (quoting State v. Riekkoff, 112 Wis. 2d 119, 124, 332 N.W.2d 744 (1983)).

 Majority op., ¶ 34.

 Majority op., ¶ 34.

 See December 16, 2014 order granting review on the issue of express advocacy, #10.

 State ex rel. Reimann v. Circuit Court, 214 Wis. 2d 605, 623, 571 N.W.2d 385 (1997) (citing Wis. Stat. § 968.26).

 See, e.g., per curiam, ¶¶ 31-32, 34, 36.

 The original action was brought by Two Unnamed Movants. A question arises whether the Special Prosecutor's investigation of individuals and organizations that are not parties to the original action is affected by the majority opinion and per curiam. See my concurrence/dissent to the majority op., ¶ 352 n.11; Madison Teachers, Inc. v. Walker, 2013 WI 91, ¶ 20, 351 Wis. 2d 237, 839 N.W.2d 388 (limiting the scope of a judgment).

 Per curiam, ¶ 13.

 See, e.g., Wis. Coalition for Voter Participation, Inc. v. State Elections Bd., 231 Wis. 2d 670, 605 N.W.2d 654 (Ct. App. 1999); Wis. El. Bd. Op. 00-2 (reaffirmed Mar. 26, 2008).

 Per curiam, ¶ 38.

 See, e.g., Archer v. Chisholm, No. 15-cv-922—LA (E.D. Wis.).
The authority of the Government Accountability Board is also being challenged in a proceeding arising out of these investigations. See O'Keefe v. Wis. Gov’t Accountability Bd., No. 2014CV1139 (Waukesha Cnty. Cir. Ct.).

 See Wis. Stat. § 968.26(lb)(b).

 Records filed with the John Doe Judge after the records were transmitted to this court in January 2015 were ordinarily not transmitted to this court. For example, a motion was filed by Unnamed Movants with the John Doe Judge on July 17, 2015 (the day after the majority opinion was released) seeking relief from the John Doe Judge. The motion included confidential material that Waukesha County Circuit Court Judge Lee Dreyfus (presiding in O'Keefe v. Wisconsin Government Accountability Board, No. 2014CV1139 (Waukesha Cnty. Cir. Ct.)) apparently authorized to be released to the John Doe Judge. This confidential material has been filed under seal in this court.

 See Wis. Stat. § 968.26(lb)(b).